## William Favaro, by Calagio Favaro, Appellee, v. Cherubino Jacobucci, Appellant.

## Gen. No. 30,416.

1. DIRECTING VERDICT—*propriety of direction for defendant.* A motion by defendant for a directed verdict should be denied if there is any evidence in the record on which the jury can reasonably return a verdict for plaintiff.

2. NEGLIGENCE—*essentials of doctrine of attractive nuisance.* The doctrine of an attractive nuisance is that it must constitute such allurement to children of tender years as to amount to an implied invitation to them to come upon the premises.

3. NEGLIGENCE—*meat-grinding machine back of shop counter as attractive nuisance.* A meat-grinding machine standing upon a block behind the counter of a shop, the space between the block and the counter being occupied by a meat barrel, cannot be deemed an attractive nuisance.

4. NEGLIGENCE—*sufficiency of evidence to support judgment for damages for injury by attractive nuisance.* Liability under the attractive nuisance doctrine cannot be predicated upon an injury to a child invitee in a grocery and butcher shop resulting from putting its hands in the cogs and gears of such machine while it was in motion, where the machine stood on a block behind the counter in such shop, and the space between the block and the counter was occupied by a meat barrel, the nature and location of the machine not amounting to implied invitation to the child to come behind the counter and play with it.

5. NEGLIGENCE—*sufficiency of evidence to require direction of verdict for defendant in action based upon injury by alleged attractive nuisance.* Where in an action for damages for injury to a child resulting from its placing its fingers in the cogs and gears of a meat-grinding machine in defendant's grocery and butcher shop, the undisputed evidence showed that the machine was located on a block behind the counter in the shop, with a meat barrel occupying the intervening space, and that the child did not come upon the premises by reason of the attraction of the machine, defendant's motion for a directed verdict should have been granted.

Appeal by defendant from the Superior Court of Cook County; the Hon. JOHN J. SULLIVAN, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed March 2, 1926.

CAIROLI GIGLIOTTI, for appellant.

LARAMIE & SHERWIN, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The plaintiff, a minor, sued defendant in an action upon the case, and upon trial by jury obtained a verdict with damages assessed at $2,000, upon which the court, overruling a motion of defendant for a new trial, entered judgment.

The case has been tried twice, and in the former trial also the jury returned a verdict for the plaintiff in the same amount. That verdict, however, was set aside by the court and a new trial granted.

The declaration alleges that on June 24, 1922, defendant maintained, owned and conducted a retail grocery store and butcher shop at 874 Blue Island avenue in the City of Chicago; that he had upon his premises a certain meat-cutting machine which was attractive to children of plaintiff's age while in operation, having what are known as gears and cogs and being operated by electricity; that defendant negligently permitted said meat-cutting machine and the said cogs to be and remain open and unprotected and unguarded by an inclosure of some character or in some other manner, although defendant well knew that plaintiff, who was then and there below the age of discretion, was in the butcher shop with the permission of defendant and in close proximity to the machine; that the machine was of such a character that the operation thereof was liable to attract a child of plaintiff's age, the cogs of said meat-cutting machine being left in an exposed condition, while in operation, where the movements thereof could be seen and heard; that the plaintiff was likely to receive some injury while said machine was being operated; that as the proximate result of said negligence of the defendant, the plaintiff, while

on said premises, at or near said meat-cutting machine, was attracted by said meat-cutting machine and while standing near said meat-cutting machine, where the cogs thereof were unguarded and running, his hand was caught by the cogs and so mangled, crushed and lacerated as to necessitate the amputation of his hand.

At the close of defendant's evidence and again at the close of all the evidence, defendant made a motion for an instructed verdict in his favor, which was denied by the court, and the refusal to grant this motion is the principal error assigned and argued.

The rule which should be applied is well settled in this State. If there is any evidence in the record from which the jury can reasonably return a verdict for the plaintiff, the motion should be denied. If there is no such evidence, it should be granted. *Libby, Mc-Neill & Libby v. Cook,* 222 Ill. 212; *Devine v. Delano,* 272 Ill. 179.

There is no material conflict in the evidence. The defendant on June 21, 1922, owned and operated a meat market and grocery at the place alleged, and the plaintiff, who was born on April 9, 1917, lived with his family on the third floor of the building in which the business of the defendant was located. The plaintiff was not offered as a witness in his own behalf. Leo Favaro, a brother of the plaintiff, twelve years of age at the time of the trial, testified that the accident occurred about twelve o'clock of the day in question; that the mother of the witness sent him to the butcher shop to get some meat; that he did not see his brother, the plaintiff, at the time in question, and discovered his presence in the butcher shop only when he heard his cries. The witness said that he asked the meat market clerk, whose name was Louis, to get twenty-five cents' worth of ground meat; that, at the time, the clerk was in the front part of the store and back of the counter; that the meat-grinding machine was at the left and on a meat block; that the meat block above which

the meat-grinding machine was on was about three feet high; that the clerk, who was back of the counter, cut off a piece of meat, took it and placed it in the machine; that he started the machine; that Louis went to wrap the meat of another customer who was in the butcher shop; that when the plaintiff cried out, he, the witness, turned around and saw him at the machine.

This is the substance of all the evidence offered in behalf of plaintiff as to the actual occurrence; other members of the family, the father and a brother, testified that the injured boy's hand was in good condition prior to the accident, and a physician testified as to the medical treatment given to plaintiff after, but not before, the amputation of four of his fingers.

The testimony for the defendant tends to show that there were several persons in the store of defendant at the time of the accident; that the injured boy went into the store and asked for twenty-five cents' worth of ground meat; that while Louis, the clerk, was waiting on a lady customer, plaintiff approached the place where the meat-grinding machine was, whereupon the clerk took him by the arm and pulled him to one side of the store, telling him to get away from the machine because he would get hurt; that the clerk then got the steak for the boy, put it in the grinding machine, and after grinding it went to wrap it up, when he heard the boy's cries; that Louis, the clerk, had stopped the machine as soon as he finished grinding the meat and was wrapping the meat when he heard the cry and saw that the boy was near the machine with his hand inside it. The lady customer, who was present at the time, states that she saw the boy near the machine and that the workingman chased him away; that plaintiff went about ten or eleven feet in the center of the store; that the butcher had stopped the machine and was taking a piece of paper to wrap the meat. She also testified that the button to stop the machine was beneath or under it.

Photographs in evidence show that the grinding machine was placed upon a table about three feet high to the left of and behind the left end of the counter. There was a space between the counter and the block upon which the machine stood, which was occupied by a meat barrel.

The only conflict in the evidence is with reference to whether the plaintiff's brother or plaintiff made the purchase of the meat, and this we do not regard as material. We assume that the plaintiff was not a trespasser by reason of entering the store, regardless of whether he went into the store to actually purchase the meat or to accompany his brother while the purchase was being made. There is no evidence from which it can be inferred that he entered the store on account of the attraction of the machine.

Assuming the evidence of the older brother to be true, there is nothing from which a jury could infer that the plaintiff was attracted from the street into the building by the meat grinder. The theory of the plaintiff is that this meat grinder was an attractive nuisance, but there is no evidence to indicate that it was other than the fact that this particular child was tempted to operate it and was hurt while doing so. The evidence does not show that the meat grinder was near a public street or that there was anything about it so unusual as to attract children generally. The doctrine of an attractive nuisance is that it must constitute such allurement to children of tender years as to amount to an implied invitation to them to come upon the premises. This machine would not ordinarily attract children, and there is uncontradicted evidence that plaintiff was in fact taken away from it. The attractive nuisance doctrine has been extended very far, but we think it has never yet been held that a meat-grinding machine placed behind the counter and behind a barrel in a butcher shop amounts to an invita-

tion to children to come behind the counter and the barrel and play with the machine.

Under the doctrine announced in *McDermott v. Burke*, 256 Ill. 401, we think it clear that the defendant could not be held liable on the attractive nuisance theory.

*Holbrook v. Aldrich*, 168 Mass. 15, seems to be a case directly in point. There the plaintiff, who was a minor less than seven years old, entered into a shop with her father who was about to make a purchase. She intended to buy some candy, but in the first place accompanied her father to a part of the shop at some distance from the candy counter and near to the coffee grinder. He let go her hand to get his money, and she went over to the coffee grinder, put her hand up to the spout out of which the ground coffee came, and lost her fingers.

In that case, the court directed a verdict for the defendant, and the Supreme Court of Massachusetts held that the direction was proper. It said, if the decision were to be put on the narrowest possible ground, the plaintiff was not within the scope of the defendant's implied invitation, and therefore was entitled to no protection against such possibilities of harm to herself, but even if she had been buying coffee, the rule would be the same. In such case, the defendant would have been bound to use due care, but would not have been bound to look out for or to prevent wrongful acts on the ground that if such act was done, it might hurt the actor. The court said, "Temptation is not always invitation."

We think that case cannot be distinguished from this one. There was no evidence, in our opinion, from which the jury could reasonably find that defendant was guilty of any negligence directly contributing to the injury which the plaintiff received, and the instruction to find for the defendant should have been given.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Johnston and McSurely, JJ., concur.